**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

TROY WOODLAND,

       Plaintiff,

   v.

DEPARTMENT OF CORRECTIONS
MEDICAL STAFF, *et al.*,

       Defendants.

Civil Action No. 22-cv-02035 (APM)

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Dismiss or Alternatively for Summary Judgment, its accompanying Memorandum in Support ("MSJ Mem."), and its Material Statement of Facts ("SMF"), collectively, ECF No. 13. For the reasons discussed below, Defendants' Motion for Summary Judgment will be granted in full.

### I. BACKGROUND

Plaintiff Troy Woodland, a D.C. Code offender who is currently designated to a federal prison, alleges that Defendants, the District of Columbia Department of Corrections ("DOC"), as well as its "Medical Staff" and "Jail Staff," violated his rights under 42 U.S.C. § 1983. Compl., ECF No. 1, at 1, 4.[1] More specifically, he contends that, while incarcerated at the D.C. Central Detention Facility ("CDF"), he was placed in a cell that contained black mold, which aggravated pre-existing medical conditions. *See id.* at 5. Moreover, he asserts that he was denied necessary medical attention for those conditions. *See id.*

---

[1] In citing to the Complaint, the court references the ECF-generated pagination.

The DOC administers an "Inmate Grievance Procedure" ("IGP") at the CDF, which sets forth a four-step process through which inmates may seek internal resolution of such grievances. *See* SMF ¶ 3; Defs.' Ex. 3 (Program Statement 4030.1M, IGP, dated May 20, 2022) ("PS 4030.1M"), ECF No. 13-3, ¶ 10.  Generally, an inmate begins with an informal grievance submitted on a request slip to a staff member.  *See* SMF ¶ 4; PS 4030.1M ¶ 19, p. 26[2] ("DOC Chart").  If the inmate is unsatisfied with the resolution of the informal grievance, he may file a formal grievance with the CDF's warden, *see* SMF ¶ 5; PS 4030.1M ¶¶ 20–21; DOC Chart.  If he remains dissatisfied, he may pursue a "level 1 appeal" to the DOC's Deputy Director, *see* SMF ¶ 6; PS 4030.1M ¶ 24a; DOC Chart, and finally, a "level 2 appeal" to the DOC's Director, which is the final stage of administrative exhaustion process, *see* SMF ¶¶ 7–8; PS 4030.1M ¶¶ 24b; DOC Chart.

On December 21, 2021, Plaintiff filed an informal grievance (No. 20220106-135) about the black mold in his cell.  SMF ¶ 9; *see* Defs.' Ex. 1 (Decl. of Danjuma Gaskins, Inmate Grievance Program Manager) ("Gaskins Decl."), ECF No. 13-1, ¶ 8; Defs.' Ex. 2, ECF No. 13-2, at 2[3] (Pl.'s Informal Grievance, dated Dec. 21, 2021) ("IG I").  On January 11, 2022, DOC Sanitarian John Beckett Brown responded to Plaintiff's informal grievance, SMF ¶ 10; Gaskins Decl. ¶ 9; Defs.' Ex. 2 at 3 (Response to IG, dated Jan. 11, 2022) ("IG Resp. I"), by moving Plaintiff to several different cells, *see* IG Resp. I; Defs.' Ex. 2 at 8 (IG, dated Jan. 6, 2022) ("IG II"); *id.* at 5 (IG, dated Jan. 11, 2022) ("IG III"); *id*. at 7 (IG, dated Jan. 18, 2022) ("IG IV").

Plaintiff was dissatisfied with the DOC's response, but instead of filing a formal grievance (and then, if necessary a level 1 or 2 appeal), he filed three additional informal grievances concerning the mold on January 6, 2022, January 11, 2022, and January 18, 2022.  *See* SMF ¶ 11;

---

[2] In citing to PS 4030.1M, the Court references the ECF-generated pagination.
[3] In citing to Defs.' Exhibit 2, the Court references the ECF-generated pagination.

Gaskins Decl.  ¶ 10; IG II; IG III; IG IV.  An IGP coordinator responded to all three of these additional informal grievances, indicating that the issues raised were redundant and already fully addressed in Sanitarian Brown's response, and the actions taken, regarding Plaintiff's first informal grievance, No. 20220106-135.  *See* Defs.' Ex. 2 at 4 (Response to IG II, dated Jan. 25, 2022); *id*. at 4 (Response to IG II, dated Jan. 25, 2022); *id.* at 6 (Response to IG III, dated Jan. 27, 2022); *id.* at 9 (Response to IG IV, dated Jan. 27, 2022).  Plaintiff was later transferred into federal custody on or about March 17, 2022.  *See* Defs.' Exhibit 4 ("Defs.' Ex. 4") (Pl.'s March Grievances & DOC's Responses), ECF No. 16-1.

On June 22, 2022, Plaintiff initiated this matter by filing a *pro se* Complaint, seeking $10 million in damages against Defendants.  *See* Compl. at 5.  On April 10, 2023, Defendants filed the pending Motion to Dismiss or Alternatively for Summary Judgment, arguing that Plaintiff fails to state a claim and that he failed to exhaust his administrative remedies.  *See* MSJ Mem. at 1–2. The following day, the court issued an Order, ECF No. 14, advising Plaintiff of his obligation to respond under the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, *see id.* at 1 (citing *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (per curiam)).  The court ordered Plaintiff to file his opposition to Defendants' Motion by May 10, 2023, and he was forewarned that failure to timely respond could result in the court granting Defendants' Motion without the benefit of Plaintiff's position.  *Id.*

On May 10, 2023, Plaintiff filed a submission entitled "Motion to Contest & Proceed" ("MTP I"), ECF No. 15, to which Defendants filed a Reply ("Reply"), ECF No. 16.  Then, on June 9, 2023, Plaintiff filed a second "Motion to Proceed" ("MTP II"), ECF No. 17, and on November

16, 2023, he filed a third "Motion to Proceed" ("MTP III"), ECF No. 19.[4]   Although Plaintiff

suggests in his third Motion to Proceed that he has experienced difficulty receiving and responding

to Defendants' submissions at his current facility, *see* MTP III at 1, it is clear that he received the

Defendants' motion, because he makes arguments specifically referencing Defendants' assertions

that he fails to state a claim, *see* MTP II at 3, 5–6, and failed to exhaust administrative remedies,

*see id.* at 1–2; MTP I at 2–3.   Consequently, the court construes Plaintiffs' Motions to Proceed as

oppositions, and has considered them in full.   *See Schnitzler v. United States*, 761 F.3d 33, 38

(D.C. Cir. 2014) (holding that a district court shall "construe a *pro se* plaintiff's filings liberally,

and . . . consider his filings as a whole before dismissing a complaint[.]").

## II. LEGAL STANDARD

Defendants assert that Plaintiff has failed to exhaust his available administrative remedies

under the Prison Litigation Reform Act ("PLRA").   *See* MSJ Mem. at 4–6.   Under the PLRA,

prisoners must exhaust their administrative remedies before filing suit in federal court.

*See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under

[42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."); *see also*

*Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all

inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong.").

Although the PLRA's exhaustion requirement is mandatory, it is not jurisdictional.

*see Woodford v. Ngo*, 548 U.S. 81, 101 (2006); *Ali v. Dist. of Columbia*, 278 F.3d 1, 5–6 (D.C.

---

[4] On December 6, 2023, Plaintiff also filed a Notice, ECF No. 20, in which it appears that he, incorrectly, infers that this matter was closed, perhaps due to lack of case activity, and he asks to appeal its "closing," *see id.* at 1–2.  However, this case has been active, and until today, no appealable orders have been entered.

Cir. 2002).  Rather, it is "an affirmative defense that the defendants have the burden of pleading

and proving." *Johnson v. Dist. of Columbia*, 869 F. Supp. 2d 34, 36 (D.D.C. 2012) (quoting

*Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Dale v. Lappin*, 376 F.3d 652, 655

(7th Cir. 2004) (per curiam)) (internal quotation marks omitted).  Therefore, a Rule 12(b)(6)

motion for failure to state a claim—rather than a Federal Rule 12(b)(1) motion for lack of subject

matter jurisdiction—is applicable to a PLRA exhaustion challenge.  *See id.* (citing *Lopez v. Huff*,

508 F. Supp. 2d 71, 75 n.4 (D.D.C. 2007); *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

In ruling upon a motion to dismiss for failure to state a claim, a court is limited to

considering the facts alleged in the complaint, any documents attached to or incorporated therein,

matters of which a court may take judicial notice, and matters of public record.  *See EEOC v.

St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir. 1997); *see also Vanover v.

Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[W]here a document is referred to in the

complaint and is central to plaintiff's claim, such a document attached to the motion papers may

be considered without converting the motion to one for summary judgment.").  If a court considers

materials outside of those mentioned, it must convert a Rule 12(b)(6) motion to dismiss into one

for summary judgment.  *See Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011) (citing Fed.

R. Civ. P. 12(d)).

Here, because Defendants have submitted, and the court has considered, matters outside of

the pleadings, the court considers Defendants' motion as one for summary judgment under

Rule 56.  *See Johnson*, 869 F. Supp. 2d at 37 (collecting cases applying Rule 56 to an exhaustion

defense).  A court shall grant summary judgment if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v.*

*Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it can affect the substantive outcome of the litigation.  *See Liberty Lobby, Inc.*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby, Inc.*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

In considering a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255.  However, the non-movant's opposition "must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Johnson*, 869 F. Supp. 2d at 37–38 (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  And the non-movant is obligated to present evidence permitting a reasonable jury to find in his favor, *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987); if the evidence submitted is "merely colorable" or "not significantly probative," summary judgment may be granted, *Liberty Lobby, Inc.*, 477 U.S. at 249–50.

### III.  DISCUSSION

Defendants argue that, although Plaintiff initiated the IGP process regarding his black mold grievance, he failed to exhaust his administrative remedies and is thus prohibited under the PLRA from raising them in this matter.  *See* MSJ Mem. at 4–6.  In response, Plaintiff asserts that he was "unable to complete the grievance steps" because he was aware that he would be, at some point, transferred into federal custody, and he was, in fact, transferred, in late March 2022; therefore, he

contends that his pursuit of additional IGP steps beyond the informal grievance stage would have been futile. *See* MTP I at 2; MTP II at 1–2.

Plaintiff is correct that some courts have held that a transfer from a local to federal intuition *may* render administrative remedies unavailable to a prisoner, but his circumstances do not fall into this category. The case of *Bradley v. Washington*, 441 F. Supp. 2d 97 (D.D.C. 2006), provides a useful comparator. There, the court held that, where the plaintiff was transferred from the CDF into federal custody less than a week after the incidents at issue, and the Department of Corrections provided no mechanism to submit complaints after transfer, the plaintiff was not required to exhaust. *See id*. at 101–02. On the other hand, the court also held that a different claim was barred for failure to exhaust, where the plaintiff had filed an informal grievance but had failed to pursue a formal grievance, and where his transfer from the CDF into federal custody less than a month and a half later did "nothing to relieve him of this failure." *Id.* at 101–02 & n.6.

Here, Plaintiff filed his first informal grievance (No. 20220106-135) regarding the black mold on December 21, 2021, *see* SMF ¶ 9; Gaskins Decl. ¶ 8; IG I, and he was not transferred into federal custody until around March 17, 2022, *see* MTP I at 2; MTP II at 1; Defs.' Ex. 4. That nearly three-month period provided Plaintiff with meaningful time and opportunity to pursue a formal grievance and more. Plaintiff therefore cannot avoid the exhaustion requirement because of his transfer to a federal facility. *See Bradley,* 441 F. Supp. 2d at 102 n.6; *Miller v. Najera*, No. 12–cv–01288–LJO, 2017 WL 6538998, at *7 (E.D. Cal. Dec. 21, 2017) (collecting cases from various jurisdictions in holding that the plaintiff had failed to administratively exhaust his claim, and finding that he could have meaningfully continued to pursue his grievance while incarcerated at a local facility, despite his transfer into federal custody one month later); *Allen v. Jussila*, No. 08–6366, 2010 WL 3521934, at *8–*10 (D. Minn. Aug. 5, 2010) (finding that the plaintiff did

not administratively exhaust his claims because he failed to appeal the grievance response while incarcerated at a local facility, despite his transfer into federal custody less than three months later).

Notably, Plaintiff's failure to timely file a formal grievance—which was due by January 17, 2022, five days after his receipt of the DOC's response to his informal grievance, *see* PS 4030.1M ¶ 20(a)(1); IG Resp. I; SMF ¶ 12; Gaskins Decl. ¶ 11, and two months before Plaintiff was transferred—standing alone, is fatal to his claim.  "When the prisoner causes the unavailability of the grievance process by simply not filing a [formal] grievance in a timely manner, the process is not unavailable but rather forfeited." *Linares v. Jones*, No. 04-0247, 2007 WL 1601725, at *3 (D.D.C. June 4, 2007) (finding that the plaintiff failed to administratively exhaust his claim under the PLRA because he was incarcerated at the CDF for several months before his transfer to federal custody) (quoting *Kaba v. Stepp*, 458 F.3d 678, 685 (7th Cir. 2006)); *see Way v. Johnson*, 893 F. Supp. 2d 15, 20 (D.D.C. 2012) (noting that, if an inmate omits any step, or fails to follow any procedure of DOC's IGP process, he has failed to properly exhaust his administrative remedies); *Hagens v. Correctional Corp. of America*, No. 05–1917, 2006 WL 2793175, at *1 (D.D.C. Sept. 28, 2006) (same).  Put differently, "so long as some remedy remains available, failure to exhaust is not excused." *Ruggiero v. County of Orange*, 467 F.3d 170, 177 (2nd Cir. 2006).

Plaintiff's knowledge that he would eventually be transferred does not excuse his failure to exhaust.  *See* MTP II at 2. "To relieve prisoners from their duty to exhaust available administrative remedies because they are later transferred to a different facility would de-incentivize them from complying with the dictates of the PLRA." *Sourander v. Hanft*, No. 18-11162, 2019 WL 5800299, at *5–*6 (E.D. Mich. Aug. 7, 2019) (finding that the plaintiff failed to exhaust his claim by filing two informal grievances with correctional officers, and his argument that he declined to exhaust because he knew he would soon be transferred from county jail to the

Michigan Department of Corrections was unavailing).  By this logic, a prisoner "could simply wait" until they are transferred to file a § 1983 claim, "in an effort to avoid the exhaustion requirement" entirely.  *See id*. at \*6.

As Defendants note, Plaintiff was well-versed in the IGP process because evidence shows that he, both previously and contemporaneously, submitted formal grievances and appeals through the IGP process. *See* Defs.' Exhibit 5, ECF No. 16-2, (Formal Grievance, dated Jan. 25, 2022 & Level 1 Appeal, dated Feb. 10, 2022) ("FG & L1 Appeal"); Defs.' Exhibit 6 (Formal Grievance, dated Oct. 24, 2021).  Indeed, during the same time frame that he received Sanitarian Brown's response to his informal complaint about the mold, Plaintiff submitted a separate and unrelated formal grievance and then a level 1 appeal.  *See* FG & L1 Appeal; *see also Davis v. D.C. Dep't of Corrections*, 623 F. Supp. 2d 77, 82 (D.D.C. 2009) (concluding that "no reasonable jury could find . . . that [the plaintiff] properly exhausted his administrative remedies" where defendants, at summary judgment, submitted "evidence that plaintiff knew about and indeed utilized [DOC's] grievance process to redress two other incidents[.]").

In sum, "there is a sworn statement and documentary evidence to support the conclusion that [Plaintiff] *did not* exhaust the administrative remedies." *Plummer v. Dist. of Columbia*, 596 F. Supp. 2d 70, 74 (D.D.C. Feb. 9, 2009) (emphasis added).  Although Plaintiff disputes this evidence, "he does so in a conclusory manner[.]"  *See id.*  Consequently, because there is no genuine dispute of fact as to Plaintiff's failure to exhaust administrative remedies before filing suit, entry of judgment in favor of Defendant is warranted.[5]

---

[5] Because the Court grants Defendants' Motion for Summary Judgment, it need not reach the other bases they have proffered in support of dismissal.  *See* MSJ Mem. at 6–7.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment, ECF No. 13, and insofar as Plaintiff's oppositions are labeled "Motions," ECF Nos. 15, 17, 19, they are granted.  A final, appealable order accompanies this Memorandum Opinion.


Date: February 14, 2024

_____/s/_____
AMIT P. MEHTA
United States District Judge